UNITED STATES of America,
Plaintiff–Appellant,

v.

Lonna Deane ROSS, Defendant–Appellee.

No. 93–50098.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 3, 1994.

Decided Aug. 19, 1994.

As Amended Nov. 22, 1994.

Miriam Krinsky, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellant.

Guy C. Iversen, Federal Public Defender, Los Angeles, CA, for defendant-appellee.

Before: BROWNING, FERGUSON, and KLEINFELD, Circuit Judges.

PER CURIAM:

## I. *OVERVIEW*

The United States appeals the district court's suppression of cocaine found by airline employees during a search made pursuant to F.A.A. regulations in one of defendant's two pieces of check-in luggage. The government contends that the district court erred in concluding that the stop-and-frisk exception under *Terry v. Ohio*, the "special needs" doctrine, and the *Illinois v. Krull*, 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) good faith exception do not apply to an airline representative's search of defendant Lonna Ross' luggage. We disagree and affirm the district court's pretrial order suppressing the cocaine.

## II. *FACTUAL AND PROCEDURAL BACKGROUND*

We incorporate the following observations of the district court.

1. On April 18, 1988, American Airlines ticket agent Nathalie Lester was working at the American Airlines ticket counter at Los Angeles International Airport.

2. At approximately 12:44 p.m., a woman identifying herself as L. Ross (defendant) approached the ticket counter and stated that she had a reservation for the American Airlines flight 192 to Chicago, connecting with American Airlines flight 266 to Washington/National Airport. The flight was scheduled to depart at 12:55 p.m.

3. Ms. Lester informed Ms. Ross that her luggage would not make the flight and asked her to sign a voluntary separation baggage tag, which she did. Ms. Ross then checked two pieces of luggage: a blue nylon bag and a gray suitcase. Ms. Ross paid for her one-way ticket in cash but had no identification with her.

4. American Airlines employees are required to be alert for the presence of hijackers, terrorists, and possible explosive devices. Because defendant purchased a one-way ticket in cash, failed to produce identification and it appeared that the defendant's luggage would not travel on the same flight, pursuant to American Airlines' policy, defendant's baggage was X-rayed at

the ticket counter by Alan Donatz, Ms. Lester's supervisor, to ensure the physical safety of the airline passengers. Ms. Ross was never notified, orally or in writing, that her bag would be searched. Nor did she consent to the search.

5. The X-ray of the blue nylon bag revealed a solid rectangular object through which Mr. Donatz and Ms. Lester could not see. Ms. Lester had no training or expertise in X-ray detection. The X-ray of the gray suitcase also contained an unidentifiable item.

6. Defendant's baggage was then taken to Mr. Donatz' office. Mr. Donatz opened the blue nylon bag and found a plastic-wrapped rectangular-shaped package with the word "Rolex" on it. He removed this package from the blue nylon bag. He did not X-ray the package itself, nor did he contact any security agency.

7. Mr. Donatz could not identify the contents of the package to confirm the presence or absence of any real danger, nor could he smell gasoline, gun powder or any other incendiary substance coming from the packages. He cut the package open and determined that it actually contained a white powder substance which he suspected might be a drug. Based on this observation, Mr. Donatz called the Los Angeles International Inter–Agency Narcotics Task Force which was stationed at the airport. At no time did he ever notify the Los Angeles Bomb Squad.

8. Ms. Lester went to Mr. Donatz' office and observed the two rectangular objects removed from defendant's baggage. Since Los Angeles Police Department Narcotics Task Force Officer Robert Mallon stated that he could not open the second package, Ms. Lester opened the second package removed from the gray suitcase and found that it contained white powder.

9. Both packages contained approximately a kilogram of cocaine and Ms. Ross was arrested later that day at Chicago's O'Hare Airport.

10. There is no doubt that the search of Ms. Ross' luggage was conducted, pursuant to F.A.A. regulations, as part of this country's anti-hijacking efforts. As such, it constituted governmental conduct. Nathalie Lester testified that it was American Airline's policy, when any person paid in cash and could not produce identification, to X-ray his or her checked baggage for the security and safety of all passengers. She also testified that her concern was to make sure the checked baggage would not blow up the aircraft. Clearly, the impetus for the search in this case was to conform with the federal efforts to combat hijacking and terrorism.

11. In the present case, the first search, including the X-ray and removal of the package, was performed pursuant to F.A.A. regulations and thus constituted governmental conduct. By contrast, the kilogram resulting from the second search was suppressed because Ms. Lester acted as an agent of Los Angeles Police Officer Robert Mallon who was present and stated he could [not] open the package removed from the suitcase without a warrant.

After the entry of a conditional plea of guilty, the government contests the suppression of the cocaine found in the search of the blue nylon bag, the first search. It does not contest the suppression of the cocaine found in the gray suitcase, the second search.

## III. DISCUSSION

### A. Governmental Conduct

The government contends that the district court erred in finding that airline employees' search was governmental action covered by the Fourth Amendment. This court reviews the district court's determination that a particular search involves governmental conduct *de novo*. See, e.g., *United States v. Davis*, 482 F.2d 893, 897 (9th Cir.1973).

■ The government's involvement in promulgating the Federal Aviation Administration guidelines to combat hijacking is so pervasive "as to bring any search conducted pursuant to that program within the reach of the Fourth Amendment." *Id.* at 904 ("It makes no difference that the act of opening appellant's briefcase was accomplished by a 'private' airline employee rather than a 'public' official. The search was part of the overall, nationwide anti-hijacking effort, and con-

stituted 'state action' for purposes of the Fourth Amendment." *Id.*).

■ In the instant case, the government contends that American Airlines supervisor Donatz conducted at least part of the search to satisfy his own curiosity as to whether the package contained narcotics. The district court found that in opening the Rolex box, Donatz was following airline and F.A.A. procedures. The government fails to point to any evidence which would suggest otherwise. The district court correctly concluded that Donatz's search of Ross' checked luggage constituted governmental conduct and is subject to Fourth Amendment protection.[1]

## B. *Terry v. Ohio and United States v. Place*

In *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983), the Court held that the principles of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), apply to permit a warrantless seizure of personal luggage in the custody of the owner on the basis of less than probable cause for the purpose of pursuing a limited course of investigation, short of opening the luggage, when this investigation will quickly confirm or dispel the authorities' suspicion. This warrantless search may be conducted when there is reasonable articulable suspicion premised on objective facts that the luggage contains contraband or evidence of a crime. In *Place*, the Court held that a "canine sniff" was permitted under the *Terry* doctrine because the sniff discloses only the presence or absence of narcotics and does not expose noncontraband items that otherwise would remain hidden from public view. Moreover, the sniff does not subject the owner to the embarrassment and inconvenience associated with less discriminate and more intrusive investigative methods.

■ It is clear in this case that the requirements of *Terry* and *Place* have not been met. Without question, the opening of the "Rolex" box exceeded the permissible limits of a *Terry*-type investigative stop. As the district court in this case stated:

> Once Ms. Ross' bags were X-rayed, opened, and the "Rolex" box removed, the *immediacy* of any threat had clearly dissipated. In fact, Mr. Donatz testified that at this point he did not smell gasoline, gun powder or any other potentially incendiary substance coming from the package. Ms. Ross had already been told that her bags would not make the flight and had signed a waiver to that effect. The government had ample time to secure a warrant before opening the "Rolex" box. As such, the government cannot justify that search under *Terry*.

The government does not argue that Ross consented to the search in any way. We thus have no occasion to decide whether notification to her that her baggage would be searched, and an opportunity to retrieve it without search, would have obviated the constitutional violation which the district court correctly identified. *Cf. Davis*, 482 F.2d at 913.

## C. *"Special Needs" Doctrine*

■ The government next contends that the district court erred in concluding that the search was not "reasonable and proper" under the "special needs" doctrine, as applied in *Skinner v. Railway Labor Executives' Assn.*, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). This issue is raised for the first time on appeal. As a general rule,

---

1. The findings of fact of the district court which are clearly sustained by the evidence distinguish this case from those which have upheld airport searches against claimed violations of the Fourth Amendment because they were private and not governmental searches. See *United States v. Gumerlock*, 590 F.2d 794 (9th Cir.1979) (en banc) (airport shipment which was not subject to governmental mandatory security screening procedures is a private one conducted without government intervention, and is therefore not subject to the Fourth Amendment), *cert. denied*, 441 U.S. 948, 99 S.Ct. 2173, 60 L.Ed.2d 1052 (1979); *United States v. Ogden*, 485 F.2d 536 (9th Cir. 1973) (airport search exceeding the guidelines of government security screening procedures is a private search), *cert. denied*, 416 U.S. 987, 94 S.Ct. 2392, 40 L.Ed.2d 764 (1974).

issues raised for the first time on appeal are not considered by this court. *United States v. Reyes,* 8 F.3d 1379, 1390 (9th Cir.1993). However, because the facts are undisputed, the issue is subject to *de novo* review, and the factual record is fully developed, this court may review the issue. *See United States v. Castro,* 887 F.2d 988, 996 (9th Cir. 1989). We conclude that "special needs" do not exist to justify extending the *Skinner* doctrine to apply to airport security luggage searches.

■ The Supreme Court has recognized exceptions to the warrant requirement "when special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." *Skinner,* 489 U.S. at 619, 109 S.Ct. at 1414 (quoting *Griffin v. Wisconsin,* 483 U.S. 868, 873, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987)) (internal quotations omitted).

We conclude that the special needs doctrine set out in *Skinner* and *National Treasury Employees Union v. Von Raab,* 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), is inapplicable to the search at issue in this case. Those cases do not involve a search based upon conjecture by the government of the personal effects of private individuals. Both involve searches of government employees in dangerous or sensitive positions, with full notice, for matters bearing upon their performance of their duties.

### D. *Illinois v. Krull "Good Faith" Exception*

■ The government's final contention is that the airline employee acted in good faith reliance on the American Airlines regulations in X-raying and searching Ross' checked luggage, and then opening the Rolex box. *See Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987). We reject this contention.

The search is not saved by the *Krull* good faith exception. The regulations provide that no airline "may use an X-ray system to inspect carry-on or checked articles unless a sign is posted in a conspicuous place at the screening station and on the X-ray system which notifies passengers that such items are being inspected by an X-ray and advises them to remove all X-ray, scientific, and high-speed film from carry-on and checked articles before inspection." 14 C.F.R. § 108.-17(e). Lester, the ticket agent, testified that

no such sign was posted at the ticket counter. Absence of the sign means that ·the agents could not believe that they were acting in compliance with law, or that Ross had consented to X-ray. Nor do we see on what basis a government agent could reasonably believe that he or she could open airline passengers' baggage and rummage through their belongings without limitation.

### IV. CONCLUSION

The pretrial order suppressing the search of the blue nylon bag is AFFIRMED.