# United States Court of Appeals
## For the First Circuit

No. 04-1163

UNITED STATES OF AMERICA,

Appellee,

v.

TIJANI MOMOH,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Torruella, Circuit Judge,
Cyr, Senior Circuit Judge,
and Lipez, Circuit Judge.

Thomas A. Brant, on brief, for appellant.
Cynthia A. Young, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, were on brief, for
appellee.

November 1, 2005

**TORRUELLA**, <u>Circuit Judge</u>.  In May 2000, Tijani Momoh was accused of stealing United States mail, in violation of 18 U.S.C. § 1708, from a facility at Logan International Airport in Boston, Massachusetts, where he worked as a mail handler.  After the government filed a felony information charging Momoh with three counts of theft of mail, Momoh made a motion before the district court to suppress the evidence against him.  The district court, however, denied this motion after a suppression hearing.  Momoh then waived indictment and entered a conditional guilty plea to the information, reserving his right to appeal the district court's denial of his motion.  Momoh here exercises that right.  After careful review, we affirm the order of the district court.

## I.  Factual Background

On January 10, 2000, DHL Worldwide Express ("DHL"), a private shipping company, received a package at its office in Wilmington, Massachusetts.  The package was purportedly being shipped to an address in Lagos, Nigeria by one Yosef Feldman of 26 Newhall Street in Lynn, Massachusetts.

On the front of the completed DHL airbill accompanying the package were the names and addresses of the shipper and the addressee, and, under the entry for the "full description of contents," the words "small box chocolates."  There was a notation of $80.40 in total charges, which Momoh had prepaid with a personal check drawn on a bank account in his name.  There was also a

-2-

section of the airbill that stated, in part, "I/we agree that DHL's standard terms apply to this shipment." Momoh had signed the name "Yosef Feldman" beneath this provision. The reverse side of the airbill provided DHL's "Terms and Conditions of Carriage." Centered above the individual terms and conditions was an "Important Notice," which stated: "When ordering DHL's services you, as 'Shipper,' are agreeing, on your behalf and on behalf of anyone else with an interest in the Shipment, that the Terms and Conditions shall apply from the time that DHL accepts the Shipment unless otherwise signed in writing by an authorized officer of DHL." Term and Condition number 4, entitled "Inspection," provided that "DHL has the right to open and inspect a Shipment without prior notice to Shipper."

According to DHL policy, as well as regulations promulgated by the Federal Aviation Administration ("FAA"), anyone attempting to ship a package overseas had to register with the FAA, or his or her package would be subject to opening and inspection. As a result, DHL employee Jennifer Rodríguez ("Rodríguez"), upon learning that no one with the name Yosef Feldman was registered with the FAA, decided to open the Momoh/Feldman package once it arrived at DHL's Wilmington office. Inside appeared to be a box of Russell Stover chocolates. The original cellophane wrapping had been removed, however, and replaced with household plastic wrap. After removing this wrapping and opening the Russell Stover box

itself, Rodríguez noticed that half of the chocolates were missing from their respective molded forms, and the molded template did not fit neatly into the box. She therefore removed the template from the box and discovered eight unsigned credit cards in eight different names. She also found a number of photographs, many of Momoh himself.

Rodríguez informed her supervisor, who in turn notified the Massachusetts State Police. The photographs in the Russell Stover box, as well as the personal check paying for the shipment, linked Momoh to the package. Subsequent investigation revealed that all eight credit cards in the box had originally been mailed through the United States Postal Service to places in the Boston area. On May 4, 2000, a United States Postal Inspector filed a "Criminal Complaint" alleging that Momoh had violated 17 U.S.C. § 1708. The United States soon took action on this complaint by filing a three-count felony information against Momoh.

Over two years later, on August 19, 2003, after failing to appear for a scheduled plea hearing and being arrested as a result, Momoh filed with the district court a "Motion to Suppress the Unlawful Search and Seizure." In that motion, he argued that Rodríguez's search and seizure of the package violated the Fourth Amendment because Rodríguez was acting not as a private party, but as an agent of the government, and the FAA in particular, in conducting the search and seizure. As such, she was required to

obtain a warrant if she wanted to search the package or at the very least have "reasonable articulable suspicion premised on objective facts" (citing the less rigorous standard articulated by the Supreme Court in United States v. Place, 462 U.S. 696 (1983)). After a non-evidentiary suppression hearing on November 13, 2003, the district court denied Momoh's motion, concluding that Rodríguez's search was a private one.  The court also noted that even if Rodríguez was acting as a government agent, her search of Momoh's package would have been permissible under the "border search" exception to the Fourth Amendment.

After this ruling, Momoh waived indictment and conditionally pled guilty to the three-count information, reserving his right to appeal the district court's denial of his motion.  The district court sentenced him to five months imprisonment on each count, to be served concurrently, on and after any prior sentence. Momoh here appeals the district court's denial of his suppression motion.

## II.  Discussion

### A.  Standard of review

In reviewing the denial of a motion to suppress, we review a district court's legal conclusions de novo and its factual findings for clear error.  United States v. Meada, 408 F.3d 14, 20 (1st Cir. 2005); United States v. Lawlor, 406 F.3d 37, 41 (1st Cir. 2005).  "We will uphold a denial of a motion to suppress if any

-5-

reasonable view of the evidence supports it."  United States v. Kornegay, 410 F.3d 89, 93 (1st Cir. 2005) (internal quotation marks and citation omitted).

## B.  **The nature of the search**

The Fourth Amendment states that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  The Supreme Court has "consistently construed" the Fourth Amendment protection as limiting only governmental action.  United States v. Jacobsen, 466 U.S. 109, 113 (1984).  It is not applicable "to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official."  Id. at 113-14 (quoting Walter v. United States, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)).

The key issue here is whether Rodríguez, acting pursuant to DHL policy and the FAA regulations, was effectively acting as an agent of the government when she opened Momoh's package, thus triggering the provisions of the Fourth Amendment.  If she was a government agent, then probable cause and a warrant were required before any search was undertaken.  If, however, she acted in a private capacity, then government activity is not implicated and the Fourth Amendment does not apply.  The district court held that when Rodríguez opened Momoh's package, she was not acting as an

-6-

agent of the government and that her search constituted a private search.  We agree.

In United States v. Pervaz, 118 F.3d 1 (1st Cir. 1997), we noted that "any specific 'standard' or 'test'" attempting to distinguish government from private action "is likely to be oversimplified or too general to be of help."  Id. at 6.  Instead, we identified several factors that may be relevant, depending on the circumstances: "the extent of the government's role in instigating or participating in the search, its intent and the degree of control it exercises over the search and the private party, and the extent to which the private party aims primarily to help the government or to serve its own interests."  Id.  Applying these factors to the case at hand, we think it clear that Rodríguez was acting in a private, rather than governmental, capacity.

First, Momoh concedes that the government did not participate in the search at issue here.  He argues, however, that "the sole instigating factor" in the search was the FAA regulations, or more specifically, DHL's desire to comply with them.  Momoh is claiming, in other words, that Rodríguez was a government agent because she and DHL, in opening the package, acted only out of a desire to adhere to governmental regulations.  We disagree.  Momoh's definition of the word "instigating" in our opinion in Pervaz is too broad.  It properly means "affirmative encouragement," id. (citing United States v. Smythe, 84 F.3d 1240,

1243 (10th Cir. 1996) and equating "instigation" with "affirmative encouragement"), or alternatively, "coercing," "dominating," or "directing" an individual. See Coolidge v. New Hampshire, 403 U.S. 443, 489 (1971). We define "instigating" in this way because what we are concerned with when evaluating an actor's status for purposes of the Fourth Amendment is evidence of extensive government involvement in a particular action. If such evidence is present, the provisions of the Fourth Amendment are applicable. When one defines "instigating" as Momoh does -- i.e., as being compelled to act by the mere existence of a law or regulation enacted or promulgated by governmental authorities -- almost any action can be construed as triggering the Fourth Amendment. Under such an expansive definition, a private individual crossing the street at a crosswalk is a government actor simply because he is compelled to obey the jaywalking laws. Such connections to the government are not the sort of extensive government involvement that necessitates application of the Fourth Amendment.

We also disagree with Momoh's argument here for another reason. Regardless of whether DHL made explicit its objectives when it formulated its policy or opened Momoh's package, it is likely that the company was motivated by more than a desire to comply with FAA regulations. In United States v. Edwards, 602 F.2d 458 (1st Cir. 1979), we noted that an airline's inspection privilege

-8-

> is rooted in the rule of the common law that common carriers have the right to decline shipment of packages proffered in circumstances indicating contents of a suspicious, indeed of a possibly dangerous, nature. Justification for the carrier's refusal is to be found in the exigencies of safeguarding life and property, and undeniably the frustration of criminality is likewise a worthy carrier endeavor. The imperatives of either objective may warrant inquiry by the carrier as to the contents of a parcel tendered for shipment; they may suffice, too, to justify a reasonable inspection of the parcel to fulfill that purpose.

Id. at 463 (quoting United States v. Pryba, 502 F.2d 391, 399 (D.C. Cir. 1973) (internal quotation marks omitted)). Similarly, in Illinois v. Andreas, 463 U.S. 765 (1983), the Supreme Court noted that "[c]ommon carriers have a common-law right to inspect packages they accept for shipment, based on their duty to refrain from carrying contraband." Id. at 769 n.1. These rights and privileges exist independently of the FAA regulations. Thus, it may well have been a concern with "safeguarding life and property," or a concern about "carrying contraband," rather than its desire to conform to FAA regulations, that led DHL to inspect Momoh's package. See, e.g., United States v. Young, 153 F.3d 1079, 1080-81 (9th Cir. 1998) (noting that the policy of Federal Express in carrying out package searches was based on legitimate business purposes of protecting safety and security of employees, facilities, and packages). Momoh, therefore, cannot properly claim that the FAA

regulations were the "the sole instigating factor" in the search of his package.

Second, the government exercised little control over Rodríguez and the search she conducted. DHL's policy gave company employees full discretion as to whether or not to search a given package. Such discretion belies any claim of government control. Furthermore, even if the government did exercise some broad control over DHL through promulgation of the FAA regulations, that control does not convert a private actor into a governmental one -- otherwise, as the district court noted, any workplace supervisor who enforced OSHA regulations would become a government agent. See also Jackson v. Metropolitan Edison Co., 419 U.S. 345, 354-55 (1974) (noting that the fact that a person works in a regulated business does not convert his/her every action into a state action).

Third, Momoh claims that the search of his package was undertaken primarily to help the government, rather than to serve DHL's own private interests. He attempts to support his argument by distinguishing two cases cited by the district court at the suppression hearing: United States v. Koenig, 856 F.2d 844 (7th Cir. 1988) and United States v. Pryba, 502 F.2d 391 (D.C. Cir. 1974). In both of these cases, asserts Momoh, "facts and circumstances independent of any government regulation existed to permit the conclusion that the carrier was acting for its own

private purposes." For example, in Koenig, an employee of Federal Express, after detecting the odor of a substance used to mask the smell of cocaine, conducted a search to protect the company's private interest in preventing the shipment of illegal drugs through its system. Similarly, in Pryba, the carrier had a private interest in protecting the integrity of its transport systems from contraband when the shipper acted suspiciously when dropping off a package. In the instant case, however, such circumstances are absent, and the only reason for the search, according to Momoh, was DHL's desire to enforce the FAA regulations.

This is incorrect. As we have already discussed, DHL had a number of potential reasons, notwithstanding the FAA regulations, to inspect Momoh's package. In particular, DHL had an interest in ensuring that its services were not being used for illegal purposes, and for that reason, its employees were permitted to exercise their discretion in conducting searches pursuant to DHL policy. Therefore, it cannot fairly be said that Rodríguez's search was undertaken primarily to further the interests of the government, for there is substantial evidence that DHL conducted the search of Momoh's package to further its own interests.

In addition to his use of the Pervaz factors, Momoh states that this case is closely analogous to United States v. Ross, 32 F.3d 1411 (9th Cir. 1994). In Ross, the Ninth Circuit held that an airline employee's search of a passenger's luggage

-11-

constituted state action where the employee conducted the search "to conform with the federal efforts to combat hijacking and terrorism." Id. at 1413-14. The court held that because of the government's pervasive involvement in promulgating anti-hijacking regulations, any search conducted pursuant to those regulations, even when conducted by a private airline employee, constituted government action for purposes of the Fourth Amendment. Id.

Momoh's use of Ross, however, is misplaced. The court in that case specifically noted that the district court's factual findings distinguished that case from those in which the same court had "upheld airport searches against claimed violations of the Fourth Amendment because they were private and not governmental searches." Id. at 1414 n.1. The district court in Ross had found that in opening the passenger's luggage, the airline employee was following airline and FAA procedures pursuant to a government program. Id. at 1413. There was no evidence at all to substantiate the government's claim that the employee "conducted . . . the search to satisfy his own curiosity as to whether the package contained narcotics." Id. at 1414. Thus, in the absence of any evidence that the search was a private search, the court held that search constituted state action. In the instant case, however, the district court expressly found that DHL conducted the search of Momoh's package to further its own interests and that the "general safety interest" embodied in the FAA regulations did not

convert the private employee into a government agent in this case. Therefore, there are factual findings here, unlike in Ross, that allow us to conclude that the search at issue was a private search. For all of these reasons, we hold that Rodríguez was not acting as an agent of the government when she opened Momoh's package.

## C. **Applicability of Fourth Amendment exceptions**

The district court held that even if Rodríguez was a government agent, her search did not violate Momoh's rights because of the "border search" exception to the Fourth Amendment. The border search exception provides that routine searches of persons and effects at borders are permitted without the requirement of probable cause. United States v. Ramsey, 431 U.S. 606, 619 (1977). The border search exception is not limited to searches that occur at the border itself but includes searches that take place at the "functional equivalent" of a border -- such as, for example, at the airport prior to a package being sent overseas, or at a post office where incoming international mail is processed. See Almeida-Sánchez v. United States, 413 U.S. 266, 272-273 (1973); Ramsey, 431 U.S. at 606, 610 n.2. The district court held that the search of Momoh's package at the DHL office in Wilmington, Massachusetts was a "border search."

Although we do not need to reach this issue given our holding, we note that both parties state that the district court's reliance on the border search exception was incorrect. We agree,

for the reasons asserted by the two parties in their respective briefs. First, it is unclear whether the DHL office in Wilmington was the functional equivalent of a border. As the government concedes, the record indicates only that the package was searched at that office and was intended to be shipped to Nigeria. Second, a border search is valid only if it is conducted by a person or persons with statutory authority to make such a search, or by persons empowered by a delegation of authority to conduct border searches. United States v. Victoria-Pequero, 920 F.2d 77, 81 (1st Cir. 1990); United States v. Boumelhem, 339 F.3d 414, 419, 423-24 (6th Cir. 2003). Here, however, there is no evidence that Rodríguez, either in her capacity as an employee of a private company or as an agent of the FAA, was statutorily authorized to make a border search or was empowered by a delegation of authority to conduct such a search.

We also note the government's argument that, even if Rodríguez was acting as a government agent, the defendant's rights were not violated because he consented to the search by signing the airbill and entrusting his package to DHL's care despite the statement on the airbill that DHL might open the package. The district court declined to address this argument. Given our holding that Rodríguez was not acting as a government agent, we also decline to address this argument.

## III. Conclusion

For the reasons set forth above, we affirm the order of the district court.

**Affirmed**.