**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

---

No. 08-1114

UNITED STATES,

Appellee,

v.

GRANT BOYD,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

---

Before

Boudin, Lipez and Howard,
Circuit Judges.

---

James H. Budreau on brief for appellant.
Jennifer Hay Zacks, Assistant U.S. Attorney, and Michael J. Sullivan, United States Attorney, on motion for summary disposition.

---

November 10, 2008

---

**Per curiam**. Defendant Grant Boyd conditionally pled guilty to possessing and conspiring to possess methamphetamine with intent to distribute, 21 U.S.C. §§ 841(a)(1), 846, and conspiring to launder money, 18 U.S.C. § 1956. He appeals the district court's denial of his pretrial motion to suppress evidence, in which he contended that a Fedex internal security officer had acted as an agent and instrument of the government when he opened a package addressed to Boyd. Finding no error, we summarily affirm Boyd's conviction. See 1st Cir. R. 27(c).

In December 2004, Boyd sold methamphetamine to a confidential informant who was cooperating with an FBI/DEA drug task force. Massachusetts State Trooper Shawn Murray, a task force member, learned that a "nervous" Boyd had informed the staff at his hotel that he was expecting delivery of a package. Officer Murray contacted the local Fedex office, and asked the internal security officer Joe Gulley to keep an eye out for any package addressed to the hotel. Gulley intercepted the package before delivery, and based on its suspicious appearance (e.g., heavily taped, shipped from a California freight-forwarding office, and addressed to a hotel, rather than a business or residence), he decided to open the package, whereupon he discovered a white powder. Gulley notified Officer Murray, who confirmed that the powder's appearance was consistent with methamphetamine. Boyd was arrested at his hotel when he accepted receipt of the rewrapped package. Gulley's

opening and inspection of the package was one ground for the issuance of a search warrant to search Boyd's hotel room, where police seized further evidence of his drug trafficking.

After Boyd was charged with drug trafficking and money laundering, he moved to suppress both the metamphetamine seized from the package and the other evidence found in his hotel room, based on his contention that his Fourth Amendment rights were violated because Gulley had not acted as a private party when he searched the package, but as an "agent" or "instrument" of the government (viz., Officer Murray).  See United States v. Momoh, 427 F.3d 137, 140 (1st Cir. 2005).  When the district court rejected this contention at the close of an evidentiary hearing, Boyd entered a conditional guilty plea.

We must affirm the district court's denial of appellant's suppression motion "'if any reasonable view of the evidence supports the decision.'"  United States v. Carrasco, 540 F.3d 43, 49 (1st Cir. 2008) (citation omitted).  The district court correctly applied the three-factor standard set forth in United States v. Pervaz, 118 F.3d 1, 6 (1st Cir. 1997), which assesses the extent of the government's role in instigating or participating in the search, the government's intent and the degree of control it exercised over the search and the private party, and the extent to which the private party aimed primarily to help the government or to serve its own interests.  Boyd's specific challenges to the

district court's rationale fall short.

He first suggests that Officer Murray "instigated" Gulley's search because Gulley would not have located and opened the package (which was already en route for delivery) but for Murray's tip. The "instigation" criterion is not satisfied merely because the police have made some prior contact with the private party. Id. at 5. Instigation "properly means 'affirmative encouragement,' or alternatively, 'coercing,' 'dominating,' or 'directing' an individual." Momoh, 427 F.3d at 141 (citations omitted); Pervaz, 118 F.3d at 6 (affirming a non-instrumentality determination even though "probably . . . there would have been no search made by COB employees were it not for Agent Barnard's telephone call"). The district court credited Officer Murray's testimony that he merely told Gulley to keep an eye out for any package addressed to the Nine Zero Hotel, perhaps with a view to his obtaining a search warrant to open it, and that he did not coerce Gulley, or even ask that Gully seize or search the package on his own. See United States v. Espinoza, 490 F.3d 41, 46 (1st Cir. 2007) (observing that the district court's credibility determinations at a suppression hearing are entitled to utmost deference). Under Pervaz, therefore, appellant's attempted reliance on the cumulative history of similarly non-instigative requests from Officer Murray to Gulley also is of no import.

With respect to the question of Officer Murray's intent,

appellant again suggests that, given the long history of cooperation between Officer Murray and Gully, "a reasonable inference could be easily and naturally be drawn that [they] had a tacit understanding" that Officer Murray intended that Gulley invariably would search any package which Officer Murray flagged for him. The district court chose not to draw that inference, however, id., instead crediting Gulley's testimony that, when exercising his prerogatives as Fedex's internal security officer, he did not always open and inspect packages after receiving tips from law enforcement, and that he independently decided to open appellant's package because it was heavily taped, it had been shipped by a freight-forwarding office located in California, and it was addressed to a hotel, rather than a business or residence. This evidence undermines the inference that Officer Murray knew or intended from the outset that Gulley would search the package.

Finally, appellant suggests that, given the long history of cooperation between Officer Murray and Gulley, "[t]here is only one reasonable conclusion that can be drawn from Gulley's extraordinary effort to secure this package: he wanted to assist Murray in his investigation," rather than promoting Fedex's own private interests. The mere fact that Gulley may have wanted, among his many motives in seizing and searching the package, to help Officer Murray's criminal investigation does not preclude a district court determination that Gulley acted with mixed motives,

and that one of those compelling motives was to protect Fedex's own legitimate interests. See Momoh, 427 F.3d at 141-42 (noting that private carriers have a common-law right to guard against the transport of contraband, that "it is likely that the company was motivated by more than a desire to comply with FAA regulations," and "had a number of potential reasons, notwithstanding the FAA regulations, to inspect Momoh's package"); Pervaz, 118 F.3d at 6. Fedex paid Gulley to act as its internal security officer, and specifically to effectuate its stated policy of preventing its transport of contraband.

The judgment of conviction is affirmed, and the government's pending motion to file an appellate brief is dismissed as moot. See 1st Cir. R. 27.0(c).

**Affirmed**.