RUTH ANNE McMORRAN, Appellant, *v.* THE
STATE OF NEVADA, Respondent.

No. 36618

May 17, 2002 46 P.3d 81

*Steven G. McGuire,* State Public Defender, and *James P. Logan,* Chief Deputy Public Defender, Carson City, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard W. Sears,* District Attorney, and *Rusty D. Jardine,* Deputy District Attorney, White Pine County, for Respondent.

# OPINION

*Per Curiam:*

Appellant Ruth Anne McMorran contends that the search of her motel room by state law enforcement officers violated the Fourth Amendment to the United States Constitution. The question presented is one of first impression in Nevada: is a person's consent to search voluntary when it is given in response to a threat by the police to seize the person and the property while a search warrant is sought but there are no grounds for such a seizure? We conclude that such consent is not voluntary, reverse McMorran's judgment of conviction, and remand.

## FACTS

On October 27, 1999, the White Pine County Sheriff's Department received an anonymous telephone call that drugs were being sold at Room 114 in the Great Basin Inn in Ely. The male caller also said that the occupants of the room were armed with weapons of unknown type and drove a red Pontiac Sunbird with California plates. This information was dispatched to Officer E.G. Carlton of the Nevada Division of Investigations. Officer Carlton contacted Officers Gabor Visnovits and Matt Hibbs and met them at the motel. A red Pontiac Sunbird with California plates was parked in front of Room 114. Carlton learned that the room was rented to McMorran and that there was also a male occupant. The officers donned garb identifying them as police and went to the room.

Officer Visnovits knocked at the room door, which was answered by Kane Searcy. Searcy was 17 years old, but had a large build and appeared older. Visnovits asked permission to enter, and Searcy gave it. Officer Carlton asked if any weapons were present, and Searcy said no. Carlton asked permission to search the room. The officers were armed, and at least one had his weapon visible. Carlton also testified that he "was probably invading [Searcy's] body space . . . standing very close to him . . . until the situation was totally under control." Searcy gave his consent. The officers then heard someone in the bathroom. Searcy said it was his girlfriend, the officers asked her to exit, and McMorran came out of the bathroom. Carlton then advised Searcy that he did not have to permit the search, and Searcy rescinded his consent. The officers stopped searching.

According to Carlton, he directed Officer Hibbs to contact the district attorney and apply for a search warrant. Carlton also tes-

tified that he told McMorran and Searcy that the officers would remain in the room until a search warrant was either approved or not. At this point, the only basis the officers had to suspect any criminal activity was the anonymous tip received by the sheriff's department. The officers had not perceived any evidence of wrongdoing in the room. After a few minutes and after Carlton told Searcy that it would take a while before there was a determination on the warrant, Searcy again gave permission to search. The officers then found marijuana and drug paraphernalia.

Officers Carlton and Visnovits later testified that none of the officers drew or brandished their weapons, raised their voices, or either threatened or made promises to Searcy or McMorran on the night of the search. Carlton testified that the two occupants appeared frightened. He answered no when asked if any officer "engaged in conduct calculated to trick" Searcy into providing consent.

In March 2000, McMorran pleaded guilty to aiding and abetting the possession of a controlled substance for the purpose of sale, a category D felony. The plea was conditioned on her right to file a motion to suppress evidence and to appeal the suppression issue if the motion was denied. The district court held an evidentiary hearing on the motion in July 2000 and denied the motion with little explanation. The court then entered judgment, sentenced McMorran to a prison term of 14 to 36 months, suspended the sentence, and placed her on probation for a term of not more than three years.

## DISCUSSION

McMorran contends that the district court erred in denying her motion to suppress because the search of her motel room violated the Fourth Amendment. She contends that consent to search the room was not voluntarily given.

The Fourth Amendment to the United States Constitution and the Nevada Constitution proscribe all unreasonable searches and seizures.[1] The Fourth Amendment protection against unreasonable searches applies to persons in hotel rooms as well as at home.[2] Subject only to a few specific exceptions, searches conducted without prior approval by a judge or magistrate are per se unreasonable.[3]

---

[1]U.S. Const. amend. IV; Nev. Const. art. 1, § 18.

[2]*Edwards v. State,* 107 Nev. 150, 154, 808 P.2d 528, 530-31 (1991) (citing *United States v. Diaz,* 814 F.2d 454, 457-58 (7th Cir. 1987)).

[3]*Alward v. State,* 112 Nev. 141, 151, 912 P.2d 243, 249-50 (1996) (citing *Katz v. United States,* 389 U.S. 347, 354 (1967)).

As a preliminary point, McMorran has not argued that Searcy lacked the authority to consent to a search of the room, nor would such an argument appear to have merit.[4] A search pursuant to consent is constitutionally permissible if the State demonstrates that

> the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.[5]

Acquiescence that is "the product of official intimidation or harassment is not consent."[6] Courts must distinguish between the peaceful submission to the authority of a law enforcement officer and an intelligent and intentional waiver of a constitutional right.[7]

Although this court treats the district court's findings of fact deferentially, it reviews the lawfulness of a search de novo because such a review requires consideration of both factual circumstances and legal issues.[8] The State must prove the voluntariness of a consent by clear and convincing evidence.[9]

"Police may not threaten to obtain a search warrant when there are no grounds for a valid warrant, but '[w]hen the expressed intention to obtain a warrant is genuine . . . and not merely a pretext to induce submission, it does not vitiate consent.' "[10] However, intimating that a search warrant will automatically issue is inherently coercive.[11] Here, although Officer Carlton testified that he said only that the officers would seek a search warrant,

---

[4]*See, e.g., Illinois v. Rodriguez,* 497 U.S. 177, 181 (1990) (stating that a third party who possesses common authority over the premises may give voluntary consent to a search).

[5]*Schneckloth v. Bustamonte,* 412 U.S. 218, 248-49 (1973).

[6]*Florida v. Bostick,* 501 U.S. 429, 438 (1991).

[7]*State v. Johnson,* 116 Nev. 78, 81, 993 P.2d 44, 46 (2000).

[8]*See Alward,* 112 Nev. at 151, 912 P.2d at 250; *State v. Taylor,* 114 Nev. 1071, 1078, 968 P.2d 315, 321 (1998); *Johnson,* 116 Nev. at 80-81, 993 P.2d at 45-46.

[9]*Johnson,* 116 Nev. at 81, 993 P.2d at 46.

[10]*U.S. v. Evans,* 27 F.3d 1219, 1231 (7th Cir. 1994) (quoting *United States v. White,* 979 F.2d 539, 542 (7th Cir. 1992)).

[11]*Dotson v. Somers,* 402 A.2d 790, 794 (Conn. 1978).

other evidence in the record suggests that the officers indicated that a warrant would automatically issue. Officer Visnovits stated in his investigative report that after Searcy revoked permission to search the room, Carlton advised Searcy and McMorran "that the investigators would obtain a search warrant and that the investigators would stay in the room to prevent destruction of evidence." The report was reviewed and approved by Carlton. The words "would obtain," if accurate, improperly implied that a search warrant would automatically issue, and Carlton's statement that investigators would stay in the room in the meantime reinforced any such implication. The district court did not address this factual question in making its ruling. But even assuming that Carlton's testimony was accurate, the totality of the circumstances do not support a finding that the consent was voluntary.

Various factors weigh against voluntariness: Searcy was only seventeen and McMorran only twenty, three armed officers were in their motel room, Officer Carlton invaded Searcy's body space to control the situation, and Searcy revoked permission for the search when he first learned that he could. There is also indication of possible trickery on the part of the officers. The officer ostensibly sent to apply for the warrant had not left to contact the District Attorney when Searcy again consented to a search a few minutes later. Although Searcy was informed of his right to refuse permission and the officers testified without contradiction that they did not raise their voices or make any threats or promises, under the totality of the circumstances we conclude that the evidence is not clear and convincing that the consent was voluntary.

The most important circumstance that vitiates consent here is the officers' declaration that they would remain in the motel room while another officer sought a warrant. When the officers made this declaration, they had not uncovered any evidence of wrongdoing by McMorran or Searcy. The only basis they had to suspect the existence of criminal activity was the anonymous tip received by the sheriff's department. As discussed below, this tip did not provide probable cause for securing the room and detaining its occupants. Therefore, the seizure of the room and its occupants was unlawful and rendered the consent obtained from Searcy involuntary.

In his treatise on searches and seizures, Professor LaFave states that "even if the threat is only to seek a search warrant, the consent given in response thereto is invalid if the circumstances are such that the threat carried with it an assertion that the defendant or the property would be seized in the interim, but there were not in fact grounds for such a seizure."[12] Case law supports this statement of the law.

---

[12]3 Wayne R. LaFave, *Search and Seizure* § 8.2(c), at 651 (3d ed. 1996).

In a case decided by the Ninth Circuit Court of Appeals, the appellant purchased a flight ticket at an airport, checked his suitcase, and then was stopped by a federal drug enforcement agent.[13] The agent asked permission to search the appellant's briefcase, told the appellant he need not consent, but stated that if permission were denied the agent would seek a search warrant. The appellant consented to the search.[14] The court concluded that

> the consent to search the briefcase . . . was not voluntary. When the agent informed appellant that if consent was not forthcoming he would attempt to secure a search warrant, there was a clear implication that appellant would be retained in custody until the warrant was obtained. The only reasonable construction appellant could place on the agent's statement was that appellant would not be permitted to frustrate the agent's attempts by boarding his plane . . . .[15]

Until the agent searched the briefcase, he lacked probable cause to believe that the appellant possessed narcotics, so the threatened detention would have been an unlawful arrest.[16] The court concluded by observing that "consent obtained under threat of subjecting appellant to such an arrest cannot be said to be voluntary."[17]

In another case where officers were allowed to enter a defendant's home and obtained consent to search after telling the defendant he was not required to consent, the Montana Supreme Court concluded that the consent was not voluntary.[18] The court focused on a number of factors, particularly the statement by one officer to the defendant that absent consent the officers would remain in the house for a number of hours while a warrant was obtained.[19]

> Defendant had allowed the officers to come into his home after they asked if they could talk with him. However, they had no right to remain in his home, absent a valid warrant, if defendant revoked that consent. While the officers may have been able to remain on defendant's property during the time it took to obtain a warrant, it was a misrepresentation to imply that they could remain in defendant's home, keep-

---

[13]*United States v. Ocheltree,* 622 F.2d 992, 993 (9th Cir. 1980).

[14]*Id.*

[15]*Id.* at 994.

[16]*Id.*

[17]*Id.*

[18]*State v. Rushton,* 870 P.2d 1355 (Mont. 1994).

[19]*Id.* at 1362.

ing him and his wife in custody, while a warrant was obtained.[20]

In a case where officers lawfully entered an apartment but did not obtain consent to search, the Washington Court of Appeals stated, "absent some emergency which would otherwise require his remaining in the apartment, [one officer's] determination to continue inside the apartment while [the other officer] left to obtain the search warrant cannot reasonably be categorized as anything less than a constructive and effective seizure" of property ultimately seized under warrant.[21] The court concluded that the seized evidence should have been suppressed because the warrantless constructive seizure was unconstitutional.[22]

Here, the State cites no evidence of criminal activity found by the officers at the time Officer Carlton stated that two officers would stay in the motel room while a third applied for a search warrant.[23] The only grounds for the officers to suspect criminal activity came from the anonymous telephone tip that drugs were being sold from the motel room. The record is bereft of any evidence showing that the tip included information establishing its reliability. The anonymous caller gave a room number and described a car, which officers later determined was driven by the

[20]*Id.* (citation omitted).

[21]*State v. Jones,* 591 P.2d 796, 800 (Wash. Ct. App. 1979).

[22]*Id.; see also U.S. v. Tillman,* 963 F.2d 137, 140, 143-44 (6th Cir. 1992) (holding that where police officers told defendant that absent consent to search his bags he would be detained two to three hours while a search warrant was sought, consent obtained was not voluntary because of the threatened detention, which lacked probable cause); *People v. Casazza,* 581 N.E.2d 651, 656 (Ill. 1991) (affirming suppression of evidence because police officers' false representation that they had authority to seize a yacht while they obtained a search warrant vitiated the consent to the search); *State v. Moreno,* 619 So. 2d 62, 65-67 (La. 1993) (stating that a "suspect's detention beyond initial questioning for the purpose of securing a search warrant is not merely a brief intrusion on liberty permissible under . . . the *Terry* doctrine, but a taking into custody, or an arrest, justifiable only on the basis of probable cause," and without probable cause such an arrest vitiates consent).

[23]According to Officer Visnovits's report, after Officer Carlton declared that the investigators would stay and a search warrant would be obtained, Visnovits questioned McMorran outside the motel room, and she admitted there were drugs in the room belonging to Searcy. The State has not argued that this admission provided lawful grounds for the seizure of the room, and it did not provide such grounds because the seizure had already been effected when the reported admission occurred. Moreover, a reasonable person would not have felt free to leave by the time Visnovits questioned McMorran, so her admission was obtained after she was in custody and violated her rights under *Miranda v. Arizona,* 384 U.S. 436 (1966). *See, e.g., Taylor,* 114 Nev. at 1082, 968 P.2d at 323 (stating that a person is in custody for *Miranda* purposes if under the circumstances a reasonable person would not feel free to leave).

room's occupants. The caller apparently did not describe the occupants of the room or the drugs being dealt. He did not identify the weapons they allegedly had, and no weapons were found. There is no indication that he explained how he had come by his information. We conclude that this anonymous tip did not provide reasonable suspicion to detain McMorran and Searcy, let alone probable cause to seize them and their motel room or to obtain a search warrant.

In *Florida v. J.L.,* the United States Supreme Court concluded that an anonymous tip alleging that a person had a gun and describing the person's appearance and location did not provide reasonable suspicion justifying a police officer's stop and frisk of the person.[24] "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.' "[25] An anonymous tip can provide reasonable suspicion to justify an investigatory stop if it exhibits sufficient indicia of reliability and is suitably corroborated.[26] "All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew· about the gun nor supplied any basis for believing he had inside information about J.L."[27] The anonymous tip "provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility."[28] Reasonable suspicion requires that a tip be reliable in its assertion of illegality, not just in identifying a person.[29] Such reliability might come in the form of information that accurately forecasts behavior by a suspect that is not easily predicted, indicating that the informant has inside knowledge about the suspect.[30]

The anonymous tip here was equivalent to the one in *J.L.* and therefore did not provide grounds to detain McMorran and Searcy. For a peace officer to detain a person, there must be "circumstances which reasonably indicate that the person has committed, is committing or is about to commit a crime."[31] At the time Searcy revoked consent to search the room, the circumstances did not reasonably indicate that McMorran and Searcy had committed or

---

[24]529 U.S. 266 (2000).

[25]*Id.* at 270 (citation omitted) (quoting *Alabama v. White,* 496 U.S. 325, 329 (1990)).

[26]*Id.*

[27]*Id.* at 271.

[28]*Id.*

[29]*Id.* at 272.

[30]*Id.* at 269-71.

[31]NRS 171.123(1).

were about to commit a crime. Therefore, once Searcy revoked consent, the officers had no grounds to detain him and McMorran or to seize the motel room. Under these conditions the consent obtained was not voluntary.

Our decision does not stand for the proposition that law enforcement officers are never allowed to secure premises to prevent the loss or destruction of evidence. If officers have probable cause to believe that a crime has occurred or is about to occur, they may lawfully secure relevant premises and seek a search warrant, and if they threaten to do so and as a result obtain consent to search, such a threat does not render the consent involuntary.[32]

## CONCLUSION

By threatening to seize the motel room and detain its occupants without having probable cause to believe that a crime had been or was about to be committed, the investigating officers obtained consent which was not voluntary under the Fourth Amendment to the United States Constitution or the Nevada Constitution. Therefore, the district court erred in refusing to suppress the evidence subsequently seized by the officers. We therefore reverse McMorran's judgment of conviction and remand for further proceedings consistent with this opinion.

---

[32]*See United States v. Faruolo,* 506 F.2d 490, 492-94 (2d. Cir. 1974) (concluding that the appellant voluntarily consented to a search after being told that absent consent his house would be kept under surveillance and a search warrant would be obtained, where there was no deceit or trickery by the police and there were grounds for a warrant because appellant had been apprehended in his backyard with stolen goods); *United States v. Agosto,* 502 F.2d 612, 613-14 (9th Cir. 1974) (concluding that consent was voluntary though it came after police officers stated that without consent they would secure the garage while they obtained a search warrant, where a real estate agent had discovered large amounts of marijuana in the garage and reported it to the police); *State v. Thorkelson,* 611 P.2d 1278, 1280 (Wash. Ct. App. 1980) (after arresting robbery suspect at the house of a third person, "police were within their rights when they stated they would impound [the person's] house until a search warrant could be secured"), *modified on other grounds by State v. Burrell,* 625 P.2d 726, 728 (Wash. Ct. App. 1981).