An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

JERMAINE JAMAICA CAMPBELL, SR.,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 60399

**FILED**

SEP 1 8 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction entered pursuant to a jury verdict of two counts of trafficking in a controlled substance. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.[1]

Appellant Jermaine Jamaica Campbell, Sr.'s sole contention on appeal is that the district court erred by denying his pretrial suppression motion because its finding that the police did not lure him from the apartment to avoid a possible objection to the search is not supported by substantial evidence. We review "the lawfulness of a search de novo because such review requires consideration of both factual

---

[1]The Honorable Janet J. Berry, District Judge, presided over the suppression hearing and the Honorable Steven P. Elliot, Senior Judge, entered the findings of fact, conclusions of law, and order denying Campbell's suppression motion.

13-27665

circumstances and legal issues." *McMorran v. State*, 118 Nev. 379, 383, 46 P.3d 81, 84 (2002).

"The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). One established exception to the warrant requirement is voluntary consent given by a person who has actual or apparent authority over the property to be searched. *Id.* The police may enter and search a resident's home with the voluntary consent of the resident or a third party who has common authority over the area to be searched. *United States v. Matlock*, 415 U.S. 164, 171 (1974). However, the police cannot conduct a warrantless search of a shared home on the basis of one resident's consent if another physically present resident expressly denies that consent, *Georgia v. Randolph*, 547 U.S. 103, 120 (2006), and any "evidence that the police have removed [a] potentially objecting [resident] from the entrance for the sake of avoiding a possible objection" will render the search invalid, *id.* at 121. Although "the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given," *Florida v. Royer*, 460 U.S. 491, 497 (1983), the defendant has the burden to present actual evidence that the police intentionally removed him from the residence to avoid a possible objection to the search, *see United States v. Parker*, 469 F.3d 1074, 1078 (7th Cir. 2006); *United States v. Alama*, 486 F.3d 1062, 1066-67 (8th Cir. 2007); *United States v. Brown*, 563 F.3d 410, 417 (9th Cir. 2009); *United States v. McKerrell*, 491 F.3d 1221, 1228 (10th Cir. 2007).

Here, the record reveals that Detective Jennifer Garnett interviewed Ashley Loftis at St. Mary's Hospital and learned that Campbell and Loftis were in a dating relationship, the dating relationship had become abusive, and Loftis had bruises where Campbell had struck her. Campbell and Loftis shared an apartment; they were both listed on the apartment lease; and the apartment contained heroin, cocaine, methamphetamine, and a handgun. And Campbell had fortified the front door with brackets, a cross bar, and a door wedge. Detective Garnett also learned from another detective that Campbell was subject to arrest on an outstanding warrant. Loftis gave Detective Garnett written consent to search the apartment, stated that her keys were inside the apartment, and agreed to lure Campbell outside of the apartment because the front door was fortified.

Detective John Silver testified during the suppression hearing that Campbell was lured outside so that he could be arrested on the outstanding warrant and probable cause that he had committed domestic battery. Campbell was arrested outside of his apartment. Detective Silver conducted a search incident to the arrest, removed an apartment key from around Campbell's neck, and told Campbell that it was standard procedure to take property off of someone being arrested. The key was subsequently used to enter the apartment. Detective Silver did not ask Campbell for permission to search the apartment, and he did not inform Campbell that his apartment was going to be searched. Detectives Silver and Michael Stewart both testified that Campbell did not say anything to indicate that he did not want his apartment searched. Campbell,

however, testified that he asked the detectives why they were taking his key, told them that they cannot search his house, and asked Detective Stewart if he had a warrant.[2]

There is no evidence in the record that Campbell was lured from his apartment for any other purpose than to facilitate his arrest on the outstanding warrant and probable cause that he had committed domestic battery. *See Brown*, 563 F.3d at 417; *McKerrell*, 491 F.3d at 1228 (asking "only whether the *evidence* shows that the officers removed [defendant] from the scene to avoid his possible objection"). That Detective Silver took a key from around Campbell's neck and later used it to enter the apartment does not change the fact that Campbell was not physically present in the apartment to expressly deny Loftis's consent. *See Brown*, 563 F.3d at 417-18. And the detectives did not have a duty to ask Campbell whether he consented to the search. *See id.* at 418; *see generally Randolph*, 547 U.S. at 122 (observing that "it would needlessly limit the capacity of the police to respond to ostensibly legitimate opportunities in the field if we were to hold that reasonableness required the police to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received"). We conclude

---

[2]The district court found that Campbell did not expressly object to the search of his apartment. This finding is not clearly erroneous "because the testimony established two equally plausible versions of the events," *Brown*, 563 F.3d at 418 n.3, and "the district court [was] in the best position to adjudge the credibility of the witnesses and the evidence," *State v. Rincon*, 122 Nev. 1170, 1177, 147 P.3d 233, 238 (2006).

that the search was lawful and the district court did not err in denying Campbell's suppression motion, and we

ORDER the judgment of conviction AFFIRMED.[3]

_____ , J.
Gibbons

_____ , J.        _____ , J.
Douglas                                      Saitta


cc:    Hon. Patrick Flanagan, District Judge
       The Digesti Law Firm, Ltd.
       Attorney General/Carson City
       Washoe County District Attorney
       Washoe District Court Clerk

_____

[3]Campbell has submitted a proper person letter in which he expresses dissatisfaction with trial and appellate counsel. Campbell is represented by counsel and has not been granted leave to file documents in proper person, see NRAP 46(b); nonetheless, the clerk of the court shall file the proper person letter received on March 25, 2013. We will not act on the claims of ineffective assistance of counsel because they should be raised in the district court through a post-conviction petition filed pursuant to NRS Chapter 34. See Feazell v. State, 111 Nev. 1446, 1449, 906 P.2d 727, 729 (1995). And to the extent that he seeks substitution of appellate counsel, the request is denied. See Thomas v. State, 94 Nev. 605, 607, 584 P.2d 674, 676 (1978).