**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Anthony Oh YOUNG, Defendant–
Appellant.**

**No. 97–10278.**

United States Court of Appeals,
Ninth Circuit.

Submitted May 8, 1998.*

Decided Sept. 4, 1998.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir. R. 34–4 and Fed. R.App. P. 34(a).

Leslie S. Fukumoto, Honolulu, Hawaii, for defendant-appellant.

Michael K. Kawahara, Assistant United States Attorney, Honolulu, Hawaii, for plaintiff-appellee.

Before: BROWNING, BRUNETTI, and RYMER, Circuit Judges.

PER CURIAM:

■ Anthony Oh Young ("Young") pled guilty to attempted possession with intent to distribute one hundred grams or more of methamphetamine, reserving the right to appeal the district court's denial of his motion to suppress evidence acquired after Federal Express ("FedEx") employees opened Young's package and contacted the Drug Enforcement Administration ("DEA") because they suspected it contained illegal drugs.

Young tendered a cardboard box containing 1,992 grams of crystal methamphetamine to the FedEx facility at the Los Angeles International Airport for shipment to Honolulu, Hawaii, addressed to "Norman Kaku c/o Guy Nakasome, 1216 Young St. Apt. 306, Honolulu, HI 96814." The sender was identified as "Francis Nakasome, Nakasome Development, 636 Fantasy St., Palmdale, CA 93551."

A FedEx security officer noted: (1) the sender had left blank airbill spaces calling for the sender's telephone number (even though the form indicated this information was "very important") and the area code of the recipient's telephone number; (2) the box smelled of pepper (commonly used to mask the odor of illegal substances); and (3) the shipment charge ($60) had been paid in cash. Suspicious, the FedEx officer opened the box pursuant to FedEx's security policy and discovered packets of a substance he believed might be methamphetamine. He resealed the package and forwarded it to FedEx's hub and corporate headquarters in Memphis, Tennessee.

The package was examined in Memphis by another FedEx security officer, who also suspected it contained methamphetamine and contacted the DEA's Memphis office. A Memphis DEA agent field tested the substance and detected methamphetamine. FedEx sent the parcel to the DEA Airport Task Force in Honolulu to effect a controlled delivery.

In Honolulu, federal agents sought and obtained a warrant authorizing the DEA to insert a "beeper" in the parcel to alert officers when it was opened. The methamphetamine was replaced, the beeper was installed, and the parcel was delivered to the addressee. Young retrieved the package from the addressee, opened it, and was immediately arrested by DEA agents.

■ The Fourth Amendment limits searches conducted by the government, not by a private party, unless the private party acts as an "instrument or agent" of the government. *See Walter v. United States*, 447 U.S. 649, 656, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980); *United States v. Reed*, 15 F.3d 928, 930–31 (9th Cir.1994); *United States v. Cleaveland*, 38 F.3d 1092, 1093 (9th Cir. 1995); *United States v. Walther*, 652 F.2d 788, 791 (9th Cir.1981). A defendant challenging a search conducted by a private party bears the burden of showing the search was governmental action. *See Cleaveland*, 38 F.3d at 1093; *Reed*, 15 F.3d at 931. Whether a search is governmental or private depends on: (1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the party performing the search intended to assist law enforcement efforts or further the party's own ends. *See Cleaveland*, 38 F.3d at 1093; *Reed*, 15 F.3d at 931; *Walther*, 652 F.2d at 792.

The record does not indicate that the government knew of or acquiesced in FedEx's search of Young's package. The record reflects that the FedEx security officer opened the package on his own initiative pursuant to FedEx security policies, and that FedEx did not contact the DEA until the package had twice been opened and examined by FedEx employees.

The district court's finding that FedEx acted pursuant to its own "legitimate business purpose" was not clearly erroneous. FedEx's policy governing the "opening of shipments" is set out in the company's policy

and procedure manual, which provides "Federal Express opens and inspects packages within the Federal Express system for safety and security reasons" and "[a]ny shipments within the Federal Express system may be opened by Corporate Security."

A FedEx zone security manager testified that FedEx adopted its policy and practice of searching suspicious packages for illegal substances for "numerous reasons," related to the job of FedEx corporate security "to protect the safety and security of our employees, our facilities and our customers' packages." A major purpose was to avoid tempting FedEx employees to pilfer packages, particularly packages containing illegal substances. The company was especially concerned about the theft of drugs because of the danger involved for FedEx employees: FedEx couriers had been killed in apparent retribution after packages containing drugs were not delivered. FedEx was also motivated by the fact that the volatility and flammability of drugs posed a serious safety hazard both to FedEx employees and the public if carried on one of FedEx's large aircraft.

In sum, Young failed to establish FedEx was acting as an instrument or agent of the government under either of the criteria identified in *Cleaveland, Reed,* and *Walther.*[1]

We also reject Young's argument that the search was a government search within our holding in *United States v. Davis,* 482 F.2d 893 (9th Cir.1973), that searches of airline passengers and their luggage conducted as part of the national "anti-hijacking" program were governmental rather than private searches. As extensively documented in *Davis,* the government participated in every aspect of the design, development and implementation of the national airport security program. In contrast, there is essentially no evidence in this record of federal involvement in the design, development and implementation of the FedEx security program under which Young's package was searched.

Young points to 14 C.F.R. § 107, which requires "airport operators" to adopt and implement security programs meeting certain criteria, but there is no indication that FedEx is an "airport operator."[2] Young also relies on 14 C.F.R. § 109, which requires indirect carriers to adopt a security program to prevent the unauthorized introduction of incendiary and explosive devices into cargo systems. There is no indication in the record that FedEx searched Young's package pursuant to a security program developed to comply with · this regulation. Section 109 says nothing about drugs, does not require carriers to search packages, and does not embody the sort of extensive federal involvement in the design, development and implementation of an elaborate security program *Davis* held established government involvement sufficient to require application of the Fourth Amendment to passenger air carrier searches.

There is no support in this record for Young's assertion that as yet unidentified federal directives establish government participation in FedEx's security program and the search of Young's package. If such directives existed, presumably they would have been produced by the FAA in response to Young's subpoena, which turned up only a single document: an irrelevant confidential FAA directive pertaining to the implementation of security measures applicable to checked baggage on passenger air flights, not cargo carried by companies such as FedEx.[3] Young's efforts to secure evidence of government involvement in the FedEx security program by cross-examination of govern-

---

1. Our conclusion that the FedEx search was private, not governmental, is consistent with the holding of the Seventh Circuit in *United States v. Koenig,* 856 F.2d 843 (7th Cir.1988), involving essentially the same FedEx practice and policy.

2. "Airport operator" is defined as "a person who operates an airport regularly serving scheduled passenger operations of a certificate holder or a foreign air carrier required to have a security program by § 108.5(a) or § 129.25 of this chapter." 14 C.F.R. § 107.1(b)(1).

3. Young points out that the subpoena was narrowed to a single year, April 17, 1994 to April 17, 1995, but Young himself asked for this limitation. Young also points out that the FAA's "response" was limited to regulations and directives pertaining to the control of illegal drugs, and suggests more significant material might have been present in broader directives. The "response" Young is referring to is the FAA's answer to a limited inquiry made of the agency by the Assistant United States Attorney, not the agency's response to Young's much broader subpoena, which extended to all security directives.

ment witnesses at the suppression hearing was equally unproductive.

The district court's denial of Young's Motion to Suppress is therefore AFFIRMED.