OPINION

Per Curiam:

The question before us is whether a police officer conducting a *185 Terry[1] pat-down search of an individual’s clothing violates an individual’s Fourth Amendment rights by continuing to feel an unidentified object after ruling out that the object could be a weapon. Applying the “plain-feel” doctrine announced in Minnesota v. Dickerson, 508 U.S. 366 (1993), we answer this question in the affirmative and conclude that the methamphetamine evidence seized from respondent Satan Renee Conners is the fruit of an unconstitutional search.

FACTS

One night in Pahrump, Nevada, in March 1998, Nye County Deputy Sheriff Jan Moore stopped Conners for speeding on a motorcycle and failing to stop at a stop sign. When Deputy Moore approached, Conners was visibly nervous, gave inconsistent answers about who owned the motorcycle, and repeatedly placed his hands in the front pockets of his jeans despite Deputy Moore’s instructions to the contrary. Conners was unable to accurately state the make and model of the motorcycle. The motorcycle also did not have a license plate.
At that point, a friend of Conners in another vehicle stopped at the scene. Deputy Moore asked Conners to whom the motorcycle belonged, and Conners replied that it belonged to the individual in the vehicle. Conners stated that he sold the bike to him six months earlier. Deputy Moore then approached the second vehicle and asked Conners’ friend to whom the motorcycle belonged. The man replied that it was his and that he had purchased it from Conners about two weeks earlier. Suspecting the motorcycle might be stolen, Deputy Moore placed Conners in handcuffs, but did not arrest him.[2]
Deputy Moore then conducted a pat-down search of Conners to check for weapons. In the course of the pat-down search, Deputy Moore felt a small, hard object in Conners’ right front pocket. Deputy Moore changed his grip to determine what the object was, and deduced that it was a glass vial commonly used to contain methamphetamine. Deputy Moore reached in Conners’ pocket and extracted the vial. It contained a white powdery substance, which Deputy Moore identified as methamphetamine. Deputy Moore then arrested Conners for possession of methamphetamine and various traffic code violations.
The state filed a criminal complaint against Conners, charging *186 him with possession of a controlled substance. Conners waived his right to a preliminary hearing and was charged by information with possession of a controlled substance in violation of NRS 453.336.
Conners filed with the district court a pre-trial motion to suppress the methamphetamine. He argued that the drugs were the fruits of an illegal search of his person. On direct examination by Conners’ counsel at the suppression hearing, Deputy Moore conceded that upon patting the object in Conners’ pocket, Moore first ruled out that it was a firearm, knife, or any other weapon that might be used against Moore. Deputy Moore further testified that upon determining that the object was not a weapon, Moore changed his grip and determined that it was, in fact, a vial.
The district court orally granted Conners’ motion to suppress, citing Dickerson as the basis for its decision. This appeal followed.

DISCUSSION

The United States Supreme Court first addressed the “plain-feel” doctrine in Dickerson. In Dickerson, two Minneapolis police officers noticed the defendant leaving a residence that they knew to be a “notorious crack house.” 508 U.S. at 368. The defendant was walking toward the officers, but immediately stopped and changed direction upon spotting them. The defendant then turned and entered an alley. Their suspicions aroused, the officers stopped the defendant. Id. at 368-69.
One of the officers pat-searched the defendant. The officer later testified: “[A]s I pat-searched the front of his body, I felt a lump, a small lump, in the front pocket. I examined it with my fingers and it slid and it felt to be a lump of crack cocaine in cellophane.” Id. at 369. The officer then retrieved the item from the defendant’s pocket and discovered a small plastic bag containing crack cocaine. Id. The defendant challenged the seizure of the drugs.
In its decision, the United States Supreme Court reiterated its holding in Terry with regard to the permissible scope of an investigative stop and frisk. A police officer may briefly stop a person to make “ ‘reasonable inquiries’ ” into unusual conduct that leads the officer to believe “ ‘that criminal activity may be afoot.’ ” Id. at 373 (quoting Terry, 392 U.S. at 30). If the officer believes that the individual may be carrying a weapon, he or she may conduct a pat-down search of the individual in the interest of officer safety. However, “[i]f the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under Terry and its fruits will be suppressed.” Id. (citing Sibron v. New York, 392 U.S. 40, 65-66 (1968)).
In some instances, however, a police officer conducting a Terry *187 search may seize contraband from the individual where its identification as contraband is “immediately apparent” to the officer. This is analogous to the “plain-view” doctrine,[3] where the officer’s means of perception is sight rather than touch. Id. at 375-76.
The Court applied this “plain-feel” doctrine to the facts in Dickerson. The record showed that the Minneapolis police officer did not claim that he suspected the object might be a weapon. In fact, the officer’s testimony revealed that he did not “immediately” recognize the lump to be crack cocaine. The identification of the object as contraband came only after the officer manipulated the object within the defendant’s pocket “—a pocket which the officer already knew contained no weapon.” Id. at 378. The Court concluded that the manipulation of the object in the defendant’s pocket amounted to an unconstitutional search because the officer continued to feel the pocket after determining that no weapon was present. Id. Therefore, the Court affirmed the suppression of the cocaine evidence. Id. at 379.
In the present case, Conners concedes that Deputy Moore lawfully stopped him and was justified in conducting a Terry pat-down search. However, Conners argues that Deputy Moore’s seizure of the methamphetamine was the result of an unlawful search that continued after the officer had determined the object was not a weapon. We agree.
In conducting the pat-down search, Deputy Moore felt something small in Conners’ pocket with an open hand and immediately ruled out that the object was a knife, gun, dirk, dagger, or other hidden instrument for the assault of a police officer. Even so, Deputy Moore continued to palpate the object, changing his hand so as to feel the object with his fingertips. Only then did the officer discover that the item was a vial of the size and shape commonly used to contain contraband. The state’s argument that the object was “immediately apparent” to Moore is belied by the officer’s own testimony. Deputy Moore admitted on direct examination that he changed his grip only after ruling out the object was a weapon. These facts fall squarely within the definition of a search that oversteps the bounds of Terry. The officer exceeded the scope of Terry by continuing to feel the object in Conners’ pocket, “a pocket which the officer already knew contained no *188 weapon.” Dickerson, 508 U.S. at 378. The subsequent seizure of the vial was, therefore, the result of an unconstitutional search because Deputy Moore lacked probable cause to extract the item from Conners’ pocket. See id. Accordingly, we affirm the district court’s order suppressing the methamphetamine evidence.

Terry v. Ohio, 392 U.S. 1 (1968).

A computer check later revealed that the motorcycle was not stolen. Additionally, the state does not argue that Deputy Moore had probable cause to arrest Conners. Accordingly, we need not consider the propriety of the issue of whether the subsequent pat-down search was a custodial search incident to a lawful arrest.

The “plain-view” doctrine holds that “if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant.” Dickerson, 508 U.S. at 375 (citing Horton v. California, 496 U.S. 128, 136-37 (1990); Texas v. Brown, 460 U.S. 730, 739 (1983)). However, if the incriminating character of the item is not immediately apparent, the officer may not seize it. Id.