DION FABION CASTEEL, APPELLANT, *v.*
THE STATE OF NEVADA, RESPONDENT.

No. 42436

March 30, 2006                                        131 P.3d 1

---

[Rehearing denied May 17, 2006]

[En banc reconsideration denied June 12, 2006]

*Philip J. Kohn*, Public Defender, and *Sharon G. Dickinson* and *Jordan S. Savage*, Deputy Public Defenders, Clark County, for Appellant.

*George Chanos*, Attorney General, Carson City; *David J. Roger*, District Attorney, *James Tufteland*, Chief Deputy District Attorney, and *Ross J. Miller*, Deputy District Attorney, Clark County, for Respondent.

Before MAUPIN, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, MAUPIN, J.:

In this appeal, we hold that a warrantless search of a residence is valid based on the consent of one occupant where the other occupant fails to object. We also resolve questions concerning custody for purposes of *Miranda v. Arizona*.[1] Finally, we conclude that only 4 counts of production of child pornography may stand because the State failed to prove production depicting separate sexual performances.

---

[1]384 U.S. 436 (1966).

## FACTS AND PROCEDURAL HISTORY

Appellant Dion Casteel engaged in a prolonged pattern of sexual misconduct with the victim in this case, his live-in girlfriend's minor daughter. This conduct included taking lurid photographs of the child. The victim eventually told her mother, who in turn contacted the police. In response, officers accompanied the victim to a local hospital for a sexual assault examination. While the victim and her mother remained at the hospital, police officers proceeded to the apartment to conduct a warrantless search pursuant to written consent from the mother. The detectives knocked on the door several times, waited a few minutes with no response, announced themselves, and entered the apartment using the key provided by the mother. Once inside, the officers encountered Casteel walking down the hallway and asked him for his identification. Casteel informed them that his identification was located in his wallet, which was inside his gym bag in another room. He allowed one of the officers to retrieve the wallet for him.

Casteel voluntarily agreed to accompany the officers to the sexual assault detail office to give a statement. Because his driver's license had been suspended, one of the officers drove him to the interview, effecting transport via an unmarked police pickup truck. The office was located inside a gated business park, which required use of a code to gain entry. After informing Casteel that he was free to leave, one of the officers interviewed him for approximately two hours without administration of *Miranda* warnings. Casteel ultimately confessed to extensive sexual contact with the victim.

Meanwhile, the other officers searched the apartment. They found oils, lubricants, and the panties in the bag where Casteel kept his wallet. Unable to locate the sexually graphic photographs described by the victim, one of the officers drove to the sexual assault detail office and asked Casteel where the photographs could be found. Casteel informed the officer of their location, and the officer called the mother for her further consent to search, stating that he had to return to the apartment and "get something." Once inside, he located 12 pornographic photographs of the victim.

The State ultimately charged Casteel with 12 counts of sexual assault of a minor under the age of 14 and 12 counts of use of a minor under the age of 14 in the production of pornography. After a 2-day trial, the jury convicted appellant of all counts, except 2 counts of sexual assault.[2] This appeal follows.

---

[2]The district court sentenced Casteel to 10 concurrent counts of life with the possibility of parole after 20 years on the sexual assault charges, and 12 concurrent counts of life with the possibility of parole after 10 years on the child pornography counts, to run consecutive with the sexual assault sentences and a term of lifetime supervision commencing upon the completion of any parole.

## DISCUSSION

### Consent to search

Prior to trial, Casteel moved to suppress the items found during the initial search, which included oils and lubricants contained in his gym bag, and the photographs obtained during the second search. Casteel argues on appeal that the district court erred in denying this motion.

This court "reviews the lawfulness of a search de novo because such a review requires consideration of both factual circumstances and legal issues."[3] A warrantless search is valid if the police acquire consent from a cohabitant who possesses common authority over the property to be searched.[4] In this case, Casteel's live-in girlfriend, and mother of the victim, clearly consented to the search and had equal control over the apartment she shared with Casteel.

Casteel contends that the mother lacked the authority to consent to the search of his bag. We disagree. Where, as here, a person cohabits with another and takes no special steps to secure a privacy interest in his or her property or explicitly denies the cohabitant all access to the property, the cohabitant may consent to the search of the entire premises.[5] Here, both the mother and the victim knew Casteel's gym bag could be found in the closet and contained lubricants and oils.

Casteel also assigns weight to the fact that his consent was not explicitly sought, even though he was present and available, and asserts that this renders the search unlawful or the officer's belief in having consent to search unreasonable. We disagree. A warrantless search is valid based on the consent of one occupant, despite the physical presence of the nonconsenting occupant.[6] Insofar as Casteel relies upon case authority involving scenarios where a defendant was present and objected to the search, that authority is inapposite to the facts of this case. Here, Casteel never expressly or impliedly protested the search or denied the mother's authority to consent to the search.[7]

---

[3]*McMorran v. State*, 118 Nev. 379, 383, 46 P.3d 81, 84 (2002).

[4]*Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990).

[5]*See State v. Gordon*, 543 P.2d 321 (Or. Ct. App. 1975).

[6]*See, e.g., People v. Sanders*, 904 P.2d 1311, 1314-15 (Colo. 1995); *State v. Frame*, 609 P.2d 830, 832-34 (Or. Ct. App. 1980).

[7]*Cf. Georgia v. Randolph*, No. 04-1067, slip op. 42 (U.S. March 22, 2006); *Tompkins v. Superior Court*, 378 P.2d 113, 116 (Cal. 1963) (conclud-

Casteel also argues that the district court improperly admitted the photographs because the victim's mother did not voluntarily consent to the second search of the house. However, the victim's mother testified that she allowed the detectives to come back into her house willingly, and thus, we find no error in admitting the photographs.

More importantly, the factual presentation in this case validates our application of this rule. Absent an objection by a resident present at the time of the search, a joint resident should most certainly be able to consent to a search of the residence to investigate and terminate the commission of ongoing criminal misconduct at or on the property.[8]

*Custody*

Casteel argues that he was in custody when the detectives interviewed him at the sexual assault detail office and, thus, his confession was inadmissible because the police did not provide *Miranda* warnings before the interrogation. We disagree.

We review a district court's factual findings pertaining to the circumstances surrounding an interrogation for clear error and the district court's ultimate determination of whether a person is in custody de novo.[9] "The Fifth Amendment privilege against self-incrimination provides that a suspect's statements made during custodial interrogation are inadmissible at trial unless the police first provide a *Miranda* warning."[10] "Custody" for *Miranda* purposes means a " ' "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' "[11] If there is no formal arrest, the pertinent inquiry is whether a reasonable person in the suspect's position would feel "at liberty to terminate the interrogation and leave."[12]

---

ing that under particular circumstances presented, joint occupant who is not present cannot authorize police to enter and search premises over objection of another joint occupant who is present).

[8]*See Randolph*, No. 04-1067, slip op. 42 (U.S. March 22, 2006).

[9]*Rosky v. State*, 121 Nev. 184, 190, 111 P.3d 690, 694 (2005).

[10]*State v. Taylor*, 114 Nev. 1071, 1081, 968 P.2d 315, 323 (1998) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)).

[11]*Alward v. State*, 112 Nev. 141, 154, 912 P.2d 243, 252 (1996) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977))), *overruled on other grounds by Rosky*, 121 Nev. 184, 111 P.3d 690.

[12]*Thompson v. Keohane*, 516 U.S. 99, 112 (1995); *see also Taylor*, 114 Nev. at 1082, 968 P.2d at 323.

In *Alward v. State*, we listed several factors pertinent to the objective custody determination: "(1) the site of the interrogation, (2) whether the investigation has focused on the subject, (3) whether the objective indicia of arrest are present, and (4) the length and form of questioning."[13] No one factor is dispositive.[14] In ruling upon Casteel's claim that he was "in custody" during the interrogation, the district court made the following findings: (1) that the interrogation was conducted in an office located in a business park, not a jail; (2) that the investigation focused on Casteel; (3) that no evidence suggested that the length or form of questioning leaned toward a custody finding; (4) that Casteel was not handcuffed or under arrest; (5) that the officers repeatedly told Casteel that he was free to leave and Casteel acknowledged this fact; (6) that the interrogation was short; and (7) that Casteel acknowledged at the evidentiary hearing that he did not know of his impending arrest until the end of the interrogation. Upon review of the tape of the interrogation, we conclude that the district court correctly admitted Casteel's confession.

*Production of child pornography*

As noted above, the jury convicted Casteel of 12 counts of production of child pornography in violation of NRS 200.710, 1 count for each photograph introduced into evidence. On appeal, Casteel argues that not all 12 of his convictions for production of child pornography can stand because the State failed to prove that he took the pictures during separate sexual performances. We agree. In *Wilson v. State*, a panel of this court held that NRS 200.710 cannot be used "to punish a defendant for multiple counts of production dictated by the number of images taken of one child, on one day, all at the same time."[15] Upon review of the State's exhibits, we conclude that the State's exhibits establish 4 counts of production of child pornography.[16] We reverse the additional 8 counts.

---

[13]112 Nev. at 155, 912 P.2d at 252.

[14]*Id.* at 154, 912 P.2d at 252.

[15]121 Nev. 345, 358, 114 P.3d 285, 294 (2005), *cert denied*, 546 U.S. ____, 126 S. Ct. 751 (2005).

[16]The jury found Casteel guilty of 12 counts of using a minor in the production of pornography. We conclude that count 15 was established by Ex. 18, count 16 was established by Ex. 26, and count 20 was established by Ex. 19. The remaining exhibits (numbered 15, 16, 17, 20, 21, 22, 23, 24, and 25) together establish only one count. Thus, on remand, the district court shall vacate all but one of the remaining counts numbered 13, 14, 17, 18, 19, 21, 22, 23, and 24.

We have considered Casteel's other arguments and conclude they are without merit.

## CONCLUSION

We conclude that Casteel's live-in companion had the authority to consent to the search of the apartment she shared with Casteel, and that Casteel was not in custody when he made incriminating statements to the police. However, we reverse 8 of the 12 counts of production of child pornography. Accordingly, we remand this matter for entry of an amended judgment of conviction.[17]

GIBBONS and HARDESTY, JJ., concur.

---

[17]In the event the district court concludes that reversal of 8 of the 12 convictions for production of pornography requires resentencing upon the convictions affirmed in this opinion, the district court may do so.