134 Nev., Advance Opinion 65

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

THOMAS WILLIAM MOONEY, A/K/A
TOM MOONEY,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 72736

FILED

AUG 30 2018

ELIZABETH A. BROWN
CLERK OF APPELLATE COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of fourteen counts of possession of a component of an explosive or incendiary device with the intent to manufacture an explosive or incendiary device and, pursuant to a guilty plea, of three counts of possession of a firearm by a person previously convicted of a felony offense. Fourth Judicial District Court, Elko County; Alvin R. Kacin, Judge.

*Affirmed.*

Kriston N. Hill, Public Defender, and Benjamin C. Gaumond, Deputy Public Defender, Elko County,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Tyler J. Ingram, District Attorney, and David A. Buchler, Deputy District Attorney, Elko County,
for Respondent.

BEFORE SILVER, C.J., TAO and GIBBONS, JJ.

18-901951

## OPINION

By the Court, GIBBONS, J.:

Aline Mooney opened the locked bedroom door of Thomas William Mooney, her adult son, while a sheriff's deputy stood nearby. The deputy did not ask Aline to open the door or suggest that he wanted to see inside the bedroom. Once the door was open, the deputy saw firearms and bomb-making materials inside the room.

This case requires us to consider whether Aline's decision to open Mooney's locked bedroom door in the presence of a law enforcement officer was sufficiently connected or related to governmental action to implicate the protections of the Fourth Amendment. Nevada caselaw, however, provides us with scant guidance on how to resolve this question.

Turning to and adopting federal caselaw, we conclude Aline's actions were sufficiently independent as to constitute private conduct. Therefore, we affirm the district court's decision denying Mooney's motion to suppress evidence because the Fourth Amendment's protections are inapplicable to such private conduct.

## FACTS

William Mooney dialed 9-1-1 to contact emergency services because his and Aline's adult son, Mooney, and an unidentified woman were allegedly using drugs and the woman was threatening suicide. Elko County Sheriff's Deputy Brian Shoaf was dispatched to William's residence.

Upon his arrival at the residence, Deputy Shoaf was invited into the house. William spoke with Deputy Shoaf in the kitchen and, upon inquiry, informed Deputy Shoaf that the incidents occurred in Mooney's bedroom, which was located down a hallway. William informed Deputy Shoaf that Mooney and the woman were using drugs, repeatedly stated he

 

was angry with Mooney, and complained that Mooney had been "destroying a lot of the house." William then guided Deputy Shoaf from the kitchen to the hallway, pointed to a closed door at the end of a hallway, and said, "that's Thomas'[ ] bedroom."

At this point, without any prompting or encouragement from Deputy Shoaf or William, Aline approached and attempted to open Mooney's bedroom door. Aline, however, could not open the door because it was locked.

Deputy Shoaf made several inquiries regarding William's and Aline's access to Mooney's room, and based on the information he gathered, informed William and Aline that Mooney "had a reasonable expectation of privacy to that room." In response, William became very agitated and denounced Deputy Shoaf's admonishment about Mooney's reasonable expectation of privacy because he owned the house and "pay[s] for it."

Though Deputy Shoaf did not ask about a key to the door or request either William or Aline to open the door, they informed Deputy Shoaf that they had a key to the door, and Aline proceeded to get the key. Deputy Shoaf cautioned William and Aline that, even though they had a key to the door, Mooney still had a reasonable expectation of privacy.

Nevertheless, Aline unlocked Mooney's bedroom door and opened it. At this time, Deputy Shoaf was down the hallway approximately ten feet from the doorway, and a majority of the room was out of his sight.

William indicated he wanted Deputy Shoaf to see the condition of Mooney's bedroom. Deputy Shoaf followed William down the hallway, stopping just outside the door. Because it was too dark in the room for him to see anything with his naked eye, Deputy Shoaf stood at the doorway, just outside the room, and shined his flashlight into the room. At some point,

William entered the bedroom and turned on the lights, and Deputy Shoaf could then see the interior of the room without the aid of his flashlight.

Standing in the hallway and looking inside the room, Deputy Shoaf observed drug paraphernalia, what appeared to be firearms, and bomb-making materials. Based on his experience in the United States Marine Corps, Deputy Shoaf recognized that some of the bomb-making materials "are very easy to accelerate, very easy to set off." Thus, Deputy Shoaf chose to enter Mooney's bedroom to examine these potentially dangerous objects more closely.

Upon entering the room, Deputy Shoaf handled one of the objects that looked like a bomb or a component thereof. Deputy Shoaf testified that this item's appearance was significant to him because it was "the makeup of an anti-personnel explosive" that could easily explode and cause severe injuries to anyone nearby. Because of this observation, Deputy Shoaf secured and left the room, and he directed William and Aline to a safe location.

Deputy Shoaf applied for and obtained a warrant to search Mooney's bedroom. Deputy Shoaf, along with several detectives and members of the Elko County Bomb Squad, executed the warrant and seized "the devices, explosive components and firearms" that Deputy Shoaf had previously observed.

## PROCEDURAL HISTORY

Mooney moved to suppress all the evidence obtained as a result of Deputy Shoaf's observations of his bedroom. He argued that he had exclusive possession and use of the bedroom such that his parents did not have authority to consent to a search of the room. Thus, he argued, Deputy Shoaf's observations of his bedroom from the hallway constituted an unreasonable, warrantless search in violation of the Fourth Amendment.

The State opposed Mooney's motion, arguing that Deputy Shoaf did not request to search Mooney's room and Mooney's parents acted independently, not as agents of the state, when Aline opened the locked bedroom door. Accordingly, it argued, the Fourth Amendment's protections did not apply to their actions as private persons, or to Deputy Shoaf's observations from the hallway, which did not exceed the parents' intrusion. Alternatively, the State argued that William and Aline had authority to consent to a search of Mooney's bedroom.

Mooney replied to the State's opposition, arguing that, regardless of whether Aline was a state agent, Deputy Shoaf's observations from the hallway constituted an unreasonable, warrantless search given what Deputy Shoaf knew about Mooney's history of living in the room and habits concerning keeping the door closed and locked.

The district court denied Mooney's motion to suppress evidence. In so doing, it found, in relevant part, that despite Deputy Shoaf's admonition that Mooney "had a reasonable expectation of privacy to that room," Aline retrieved her key to the room and proceeded to unlock and open the door to the room "[w]ithout any request or other prompting from [Deputy] Shoaf." It also found "that Aline and William were not acting as agents of the government when they provided [Deputy] Shoaf with a view of the bedroom." As a result, the district court concluded that Deputy Shoaf was not conducting a Fourth Amendment "search" when he made plain-view observations of the bedroom from the hallway. The court further concluded that Deputy Shoaf lawfully entered Mooney's bedroom because, based on his military training and experience, he "had probable cause to believe [Mooney] constructively possessed dangerous, life-threatening contraband" such that "exigent circumstances" justified Deputy Shoaf's

warrantless entry into the room to inspect the bomb-making materials and secure the room before applying for a search warrant.

The case against Mooney proceeded to a jury trial on the explosives charges. The jury found him guilty of 14 counts of possession of a component of an explosive or incendiary device with the intent to manufacture an explosive or incendiary device. Subsequently, Mooney pleaded guilty to 3 counts of possession of a firearm by a person previously convicted of a felony offense in exchange for reserving his right to appeal the district court's denial of his motion to suppress evidence. Mooney was sentenced to serve a prison term of 52 months to 11 years. This appeal follows.

## ANALYSIS

Mooney raises one issue on appeal: whether the district court erred by denying his motion to suppress evidence. Mooney argues the district court erred by determining that Deputy Shoaf was not conducting a Fourth Amendment search when he saw the bomb-making materials in Mooney's bedroom from the hallway. Specifically, Mooney takes issue with the district court's conclusion that Aline's decision to open Mooney's bedroom door did not implicate the Fourth Amendment because she was not an agent or instrument of the government.[1] Mooney does not challenge the

---

[1]Evidence of a crime or contraband that is observed by a law enforcement officer from a position that the officer has a right to be in is not a search under the Fourth Amendment as the items were observed in plain view. *See State v. Conners*, 116 Nev. 184, 187 n.3, 994 P.2d 44, 46 n.3 (2000) (noting that under "[t]he plain-view doctrine . . . if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant" (internal quotation marks

district court's conclusion that exigent circumstances justified Deputy Shoaf's entry into his bedroom, nor does he contest the subsequent issuance and execution of the search warrant.[2]

"This court reviews the lawfulness of a search de novo because such a review requires consideration of both factual circumstances and legal issues." *Casteel v. State*, 122 Nev. 356, 360, 131 P.3d 1, 3 (2006) (internal quotation marks omitted). In so doing, "this court treats the district court's findings of fact deferentially." *McMorran v. State*, 118 Nev. 379, 383, 46 P.3d 81, 84 (2002).

*State action*

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." The Fourth Amendment's protections, however, only apply to governmental action and are "wholly inapplicable" to any searches or seizures, even those that are unreasonable, that are performed by private individuals not acting

---

omitted)). Therefore, Deputy Shoaf's observations from outside the bedroom were not a violation of the Fourth Amendment unless the door to the room was unlawfully opened, which, as explained in this opinion, it was not. Mooney also argues that his parents lacked actual or apparent authority to consent to a search of his bedroom. We do not address this argument in light of our disposition.

[2]Though Mooney does not raise this issue on appeal, we agree with the district court's finding that exigent circumstances justified Deputy Shoaf's entry into Mooney's bedroom. *See Hannon v. State*, 125 Nev. 142, 147, 207 P.3d 344, 347 (2009) (exigent circumstances justify a warrantless search when law enforcement officers possess "an objectively reasonable basis to believe that there was an immediate need to protect the lives or safety of themselves or others").

as agents for the government or with the knowledge or participation of some government official. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984) (quoting *Walter v. United States*, 447 U.S. 649, 662 (1980) (Blackmun, J., dissenting)).

The Nevada Supreme Court has recognized that the Fourth Amendment's protections are limited and generally do not apply to the conduct of private individuals except under specific circumstances with sufficient indicia of governmental involvement. *See, e.g., Golden v. State*, 95 Nev. 481, 482, 596 P.2d 495, 496 (1979) (holding that a search of air freight shipment by an airline employee was a private search that lacked "the significant state involvement required to place it within the purview of the Fourth Amendment"); *Radkus v. State*, 90 Nev. 406, 408, 528 P.2d 697, 698 (1974) ("The Fourth Amendment simply does not apply where evidence is discovered and turned over to the government by private citizens."). Still, the supreme court has only issued one opinion in which it discussed in depth whether a private individual's conduct could be considered sufficiently related to governmental action as to be subject to the protections of the Fourth Amendment. *See State v. Miller*, 110 Nev. 690, 695-97, 877 P.2d 1044, 1047-49 (1994).[3] In *Miller*, the court did not announce any guiding

---

[3]In one other case, the Nevada Supreme Court briefly discussed the limits of "private conduct" for Fourth Amendment purposes. *See Barnato v. State*, 88 Nev. 508, 501 P.2d 643 (1972). In *Barnato*, the supreme court considered, in part, whether an animal control officer who suspected appellants were growing marijuana on their property was a state actor when he "surreptitiously entered [appellants'] enclosed yard" with a sheriff's deputy and "they took a leaf from one of the plants." *Id.* at 510, 501 P.2d at 644. It concluded summarily that "even if the Control Officer himself may be considered a private citizen, State action clearly was involved when he surreptitiously seized plant samples from the [appellants'] garden." *Id.* at 511-12, 501 P.2d at 645.

principles or factors other courts should consider when faced with this question beyond pointing to *Jacobsen* and other similarly general decisions from the United States Supreme Court. *See id.* We therefore look primarily to federal caselaw to complete our analysis.

While there is no bright line or defined set of features distinguishing purely private conduct from governmental action, it is well established that the Fourth Amendment's protections only apply to searches or seizures conducted by a private individual when that private individual acts as an agent or instrument for the government. *See Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971), *overruled in part on other grounds by Horton v. California*, 496 U.S. 128 (1990). Still, "there exists a gray area between the extremes of overt governmental participation in a search and the complete absence of such participation." *United States v. Reed*, 15 F.3d 928, 931 (9th Cir. 1994) (internal quotation marks omitted). "Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities, a question that can only be resolved in light of all the circumstances." *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614-15 (1989) (citations and internal quotation marks omitted). "This is a fact-intensive inquiry that is guided by common law agency principles." *United States v. Jarrett*, 338 F.3d 339, 344 (4th Cir. 2003) (internal quotation marks omitted). And it is the defendant's burden to establish "government involvement in a private search." *United States v. Cleaveland*, 38 F.3d 1092, 1093 (9th Cir. 1994).

When determining whether the requisite agency relationship exists, the majority of the federal courts of appeals that have addressed the issue have held two factors should be considered: "(1) whether the

government knew of and acquiesced in the intrusive conduct, and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends." *United States v. Miller*, 688 F.2d 652, 657 (9th Cir. 1982) (internal quotation marks omitted); *see also United States v. Ginglen*, 467 F.3d 1071, 1074 (7th Cir. 2006); *United States v. Alexander*, 447 F.3d 1290, 1295 (10th Cir. 2006); *United States v. Steiger*, 318 F.3d 1039, 1045 (11th Cir. 2003); *United States v. Young*, 153 F.3d 1079, 1080 (9th Cir. 1998); *United States v. Jenkins*, 46 F.3d 447, 460 (5th Cir. 1995); *United States v. Malbrough*, 922 F.2d 458, 462 (8th Cir. 1990). To establish the requisite agency relationship, the defendant must meet both factors. *See Miller*, 688 F.2d at 657 (using the conjunctive "and" when describing the two-factor test); *cf. Jarrett*, 338 F.3d at 345 ("[T]he Government concedes the existence of the second factor . . . . Thus, the only question before us concerns the first factor . . . ."); *Reed*, 15 F.3d at 931 (deciding that because the knowledge-and-acquiescence factor was clearly met, the court must determine whether a private individual intended "to further his own ends . . . or assist law enforcement efforts").

Concerning the first factor, "[a] private person cannot act unilaterally as an agent or instrument of the state; there must be some degree of governmental knowledge and acquiescence." *United States v. Sherwin*, 539 F.2d 1, 6 (9th Cir. 1976). "In order to run afoul of the Fourth Amendment, therefore, the Government must do more than passively accept or acquiesce in a private party's search efforts. Rather, there must be some degree of Government participation in the private search." *Jarrett*, 338 F.3d at 344. For example, in *Skinner*, the United States Supreme Court found that certain federal regulations governing private rail workers demonstrated "the Government did more than adopt a passive position

toward the underlying private conduct," such that the rail workers acted as government actors. 489 U.S. at 615; *see also People v. Wilkinson*, 78 Cal. Rptr. 3d 501, 513 (Ct. App. 2008) (rejecting the argument that an officer telling a third party he could search the defendant's room was active encouragement under factor one).

Concerning the second factor, where a private individual has "a legitimate, independent motivation to further" that individual's own ends, "any dual motive to detect or prevent crime or assist the police" must negate the independent motivation for the private intrusion to be considered governmental action. *Cleaveland*, 38 F.3d at 1094 (internal quotation marks omitted). For example, in *Cleaveland*, the court held that the intent of a power company employee who inspected an electric meter as part of his job duties to determine if the defendant was stealing electricity was not negated by any secondary intent to also assist law enforcement. *Id.* In contrast, in *Reed*, the Ninth Circuit concluded that a private individual "intended to help police" because that individual testified "that he knew from his previous dealings with the police that he was not an agent of the police department" and he "wanted to give [the police] enough information so that they knew that there may be things happening . . . that they wanted to take action on." 15 F.3d at 931 (alteration in original).

We conclude the two-factor approach provides a logical framework for analyzing whether a private party should be deemed an agent of the government, and we adopt that approach. Therefore, when determining whether the requisite agency relationship exists, two factors should be considered: (1) whether the government knew of and acquiesced in the private individual's intrusive conduct, and (2) whether the private individual performing the search or seizure intended to assist law

enforcement or had some other independent motivation. Both factors must be met for a private individual to be considered an agent or instrument of the government and implicate the Fourth Amendment. And the burden to demonstrate that a private individual has acted as a government agent or instrument rests upon the defendant who seeks refuge under the Fourth Amendment's protections. To satisfy the burden to establish the requisite agency relationship under the first factor, the defendant must show government agents knew of the intrusive conduct and acquiesced in the conduct by actively participating in or encouraging the private individual's actions. To satisfy the burden under the second factor, the defendant must show either the private individual solely intended to assist law enforcement when conducting the search or seizure, or, if dual motives exist, any independent motive for conducting the search or seizure was negated by an intent to assist law enforcement efforts.

We turn now to apply this test to the facts of the present case.

*Application to Mooney*

Although Deputy Shoaf certainly knew Aline was unlocking and opening Mooney's bedroom door, Mooney failed to meet his burden to demonstrate that Deputy Shoaf actively participated in or encouraged Aline's actions. The record demonstrates Deputy Shoaf was present when Aline opened the door and he informed Aline (as well as William) that the fact that she had access to a key to the door did not undermine Mooney's reasonable expectation of privacy in the room. Far from "affirmatively encourag[ing], instigat[ing], or initiat[ing]," *Wilkinson*, 78 Cal. Rptr. 3d at 513, Aline's intrusive conduct, Mooney can only show that Deputy Shoaf was physically present and he implicitly *discouraged* her conduct. Thus, we conclude Mooney failed to demonstrate the requisite agency relationship under the first factor.

Because we conclude that Mooney failed to demonstrate that a government officer acquiesced to Aline's conduct, we need not consider whether Aline intended to assist law enforcement in opening Mooney's bedroom door. Still, to instruct future courts on how to apply this test when faced with a similar scenario, and to provide an alternative basis for our decision, we choose to address the second factor concerning Aline's intent here.

Our inquiry focuses on Aline because she retrieved the key and opened the door. The record demonstrates Aline testified that Deputy Shoaf did not ask her to get her key to Mooney's room or to open the door. Rather, she testified that she did not feel compelled or forced "by law enforcement" to open the door, but chose to open the door after overhearing William and Deputy Shoaf go down the hall toward Mooney's room. The record shows that William insisted that Deputy Shoaf see the state of Mooney's bedroom, not because he believed explosives or evidence of a crime were present inside, but because he was angry with the way Mooney had been living. Deputy Shoaf's cautionary admonition that Mooney had a reasonable expectation of privacy in his bedroom caused William to become incensed. The record demonstrates that, in response to William's outrage, Aline opened the door. Thus, rather than intending to assist Deputy Shoaf, the record suggests that Aline's only intent was to pacify her husband by opening the bedroom door. Mooney identifies no evidence pointing to another motive. Accordingly, we also conclude that Mooney could not have met his burden to demonstrate the requisite agency relationship under the second factor.

As the district court correctly found, the record demonstrates that Deputy Shoaf's only participation in Aline's efforts was his physical

presence and several verbal admonishments pointing out that Mooney enjoyed a reasonable expectation of privacy in his bedroom, which was protected by a locked door. Therefore, we conclude that the district court did not err in finding that Aline did not act as an agent of the government when she opened Mooney's door. Consequently, Deputy Shoaf's observations of bomb-making materials inside Mooney's room in plain view from the hallway involved no Fourth Amendment search. *See Horton,* 496 U.S. at 133 n.5.[4] Accordingly, we conclude the district court did not err by denying Mooney's motion to suppress evidence.

## CONCLUSION

Searches and seizures conducted by a private individual only implicate the Fourth Amendment when a private individual acts as an agent or instrument for the government. Because there is no bright line or defined set of features for distinguishing purely private conduct from governmental action, turning to federal caselaw, we adopt a two-factor approach for analyzing whether a private party should be deemed an agent of the government. To determine whether the requisite agency relationship exists, two factors should be considered: (1) whether the government knew

---

[4]Mooney argues in his reply brief that "the plain view doctrine" is inapplicable to Deputy Shoaf's observation of the items in his room from the hallway because he did not come across these items inadvertently, but was engaged in "a fishing expedition." The United States Supreme Court, however, eliminated the "inadvertence" element from this doctrine in *Horton* such that it is immaterial whether Deputy Shoaf came across the incriminating evidence in Mooney's room inadvertently or otherwise. *See Horton,* 496 U.S. at 130 ("[E]ven though inadvertence is a characteristic of most legitimate 'plain-view' seizures, it is not a necessary condition."); *United States v. Williams,* 592 F.3d 511, 522-23 & n.3 (4th Cir. 2010) (overruling cases requiring "inadvertence" for plain-view seizures due to conflict with *Horton*). Thus, we reject Mooney's plain-view argument.

of and acquiesced in the private individual's intrusive conduct, and (2) whether the private individual performing the search or seizure intended to assist law enforcement or had some other independent motivation. Applying this test to the facts in this case, we conclude Mooney did not meet his burden and demonstrate Aline was acting as an agent or instrument of the government. We conclude that Deputy Shoaf did not violate Mooney's Fourth Amendment rights by peering into and entering his room to secure it and protect others from the potential harms that may have resulted from the explosives Deputy Shoaf perceived in plain view. We therefore affirm the district court's order denying Mooney's motion to suppress evidence and affirm his judgment of conviction.

_____, J.
Gibbons

We concur:

_____, C.J.
Silver

_____, J.
Tao

Court of Appeals
of
Nevada

(0) 1947B